**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------

RYAN O'DELL,                                                    :
                                                               :
                   Plaintiff,                                  :    Civil Action No. 1:22-cv-10132
                                                               :
v.                                                             :    **COMPLAINT FOR VIOLATIONS OF**
                                                               :    **SECTIONS 14(a) AND 20(a) OF THE**
ALTRA INDUSTRIAL MOTION CORP.,                                 :    **SECURITIES EXCHANGE ACT OF**
CARL R. CHRISTENSON, LYLE G.                                   :    **1934**
GANSKE, J. SCOTT HALL, NICOLE                                  :
PARENT HAUGHEY, DR. MARGOT L.                                  :    **JURY TRIAL DEMANDED**
HOFFMAN, THOMAS W. SWIDARSKI, LA                               :
VONDA WILLIAMS, JAMES H.                                       :
WOODWARD, JR.,                                                 :
                                                               :
                   Defendants.                                 :
----------------------------------------------------------

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against Altra Industrial Motion Corp. ("Altra"

or the "Company") and the members of Altra's board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a),

78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the

proposed acquisition of Altra by affiliates of Regal Rexnord Corporation ("Regal Rexnord").

2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Definitive Proxy Statement on Schedule 14A (the

"Proxy Statement") to be filed on November 23, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Aspen Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Regal Rexnord, will merge with and into Altra, with Altra surviving as a wholly-owned subsidiary of Regal Rexnord (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on October 26, 2022 (the "Merger Agreement"), each Altra stockholder will receive $62.00 in cash (the "Merger Consideration") for each Altra share owned.

3. As discussed below, Defendants have asked Altra's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Altra's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction), as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company's stock trades on the NASDAQ Stock Market, headquartered in this District, and because the Company's proxy solicitor, Innisfree M&A Incorporated, is also headquartered in this District.  Lastly, the closing of the Proposed Transaction will take place at the offices of Cravath, Swaine & Moore LLP, located in this District.

**PARTIES**

9.      Plaintiff is, and has been at all relevant times, an owner of Altra stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Carl R. Christenson has served as a member of the Board since July 2007 and is the Chairman of the Board and the Company's Chief Executive Officer.

11.     Individual Defendant Lyle G. Ganske has served as a member of the Board since November 2007.

12.     Individual Defendant J. Scott Hall has served as a member of the Board since October 2020.

13.     Individual Defendant Nicole Parent Haughey has served as a member of the Board since April 2020.

14.     Individual Defendant Dr. Margot L. Hoffman has served as a member of the Board since April 2018.

15.     Individual Defendant Thomas W. Swidarski has served as a member of the Board since April 2014.

16.     Individual Defendant La Vonda Williams has served as a member of the Board since October 2021.

17.     Individual Defendant James H. Woodward, Jr. has served as a member of the Board since March 2007.

18.     Defendant Altra is a Delaware corporation and maintains its principal offices at 300 Granite Street, Suite 201, Braintree, MA 02184.  The Company's stock trades on the NASDAQ Global Select Market under the symbol "AIMC."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

21.     Altra designs, produces, and markets a range of electromechanical power transmission motion control products for use in various motion-related applications and high-volume manufacturing and non-manufacturing processes.  It operates in two segments, Power Transmission Technologies (PTT) and Automation & Specialty (A&S).  The PTT segment offers couplings, such as gear couplings, diaphragm and disc couplings, elastomeric couplings, miniature

4

and precision couplings, universal joints, mill spindles, and shaft locking devices under the Ameridrives, Bibby, Guardian, Huco, Lamiflex, Stromag, and TB Wood's brands; clutches and brakes under the Industrial Clutch, Formsprag, Stieber, Stromag, Svendborg, Twiflex, and Wichita brands; electromagnetic clutches and brakes under the Inertia Dynamics, Matrix, Stromag, and Warner Electric brands; and gears under the Bauer Gear Motor, Boston Gear, Delroyd, and Nuttall brands. The A&S segment provides rotary precision motion solutions, including servo and stepper motors, precision linear actuators, and electronic drives and motion controllers, as well as related software under the Kollmorgen brand; and miniature motors, and motion control products, such as brush and brushless DC, can stack, and disc magnet motors under the Portescap brand. This segment also offers linear bearings, guides, glides, lead and ball screws, industrial linear actuators, resolvers, and inductors for the transition of rotary motion to linear motion under the Thomson brand. The Company was formerly known as Altra Holdings, Inc. and changed its name to Altra Industrial Motion Corp. in November 2013. Altra was incorporated in 2004 and is headquartered in Braintree, Massachusetts.

22.      On October 27, 2022, the Company announced the Proposed Transaction:

BRAINTREE, Mass., Oct. 27, 2022 (GLOBE NEWSWIRE) -- Altra Industrial Motion Corp. (Nasdaq: AIMC) ("Altra" or the "Company"), a premier global manufacturer and supplier of motion control, power transmission and automation products, announced today that it has entered into a definitive agreement to be acquired by Regal Rexnord Corporation ("Regal Rexnord") for approximately $5.0 billion on an enterprise value basis. Under the terms of the agreement, Altra shareholders will receive $62.00 in cash for each share of Altra common stock, representing a 54% premium to the closing price of the Company's common stock on October 26, 2022. Regal Rexnord has fully committed debt financing and there are no financing conditions associated with the transaction.

"The sale of Altra to Regal Rexnord will provide our shareholders with immediate and substantial cash value, as well as a compelling

premium, and the Board of Directors has agreed that this transaction is in the best interests of our shareholders", said Carl Christenson, Chairman and CEO of Altra. "I am extremely proud of the company we have built and I am excited to announce this new chapter for Altra, knowing that the company will have a great home within the Regal Rexnord organization."

Altra's Board of Directors has approved the merger agreement and the transaction is expected to close in the first half of 2023, subject to customary closing conditions, including approval by Altra shareholders and receipt of regulatory approvals. Upon completion of the transaction, Altra shares will no longer be listed on any public market.

**Preliminary Financial Results**

Revenue for the third quarter 2022 was $466.3 million, down less than 1%, compared to $469.3 million in the third quarter 2021. Organic revenue growth* was up 1.9%, after adjusting for FX and the acquisition of Nook Industries. Included in the Q3 2021 net sales are revenues of approximately $41.3 million related to the Jacobs Vehicle Systems business that was divested by the Company on April 8, 2022. Net Income for the third quarter of 2022 was $33.6 million, or 7.2% of revenues. Non-GAAP adjusted EBITDA* was $92.1 million, or 19.8% of revenues. The Company ended the quarter with total gross debt of $1.06 billion and net debt* of approximately $860 million. The Company now plans to release its full 2022 unaudited third quarter financial results before the market opens on Monday, October 31, 2022. The previously announced conference call scheduled for Thursday, November 3, 2022, at 11:00 a.m. Eastern Time will be cancelled.

*Represents a non-GAAP financial measure. Additional information on non-GAAP financial measures presented herein is available at the end of this release.*

**Financial Disclosure Advisory**

All financial results for the third quarter 2022 and related comparisons to prior periods included in this release are preliminary, unaudited, based on the Company's estimates and prepared prior to the completion of the Company's financial statement close process. Final results for third quarter 2022, which will be reported on a Quarterly Report on Form 10-Q, may vary from the information in this press release. In addition, any statements regarding the Company's estimated financial performance for the third quarter of

2022 do not present all information necessary for an understanding of the Company's financial condition and results of operations as of and for the quarter ended September 30, 2022.

**Financial Guidance**

Due to the announced transaction, the Company will no longer update financial guidance.

**Advisors**

In connection with the transaction, Goldman Sachs & Co. LLC is serving as sole financial advisor and Cravath, Swaine & Moore LLP is serving as legal advisor to Altra.

\* \* \*

23.    The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Altra's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    The Materially Incomplete and Misleading Proxy Statement**

24.    On November 23, 2022, Altra filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

7

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

25.     The Proxy Statement fails to provide material information concerning financial projections by Altra management and relied upon by Goldman Sachs and Deutsche Bank in their analyses.  The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.  The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board, Goldman Sachs, and Deutsche Bank to aid them in forming a view about the stand-alone valuation of the Company.  Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Altra management provided to the Board and the financial advisors.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-03 (Del. Ch. 2007).

26.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate the metrics or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).  In the case of Unlevered Free Cash Flow, the Proxy Statement also fails to disclose the definition of or formula to calculate the metric

27.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates,

8

also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28.     The SEC has noted that:

> [C]ompanies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

29.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

30.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of illustrative terminal values for Altra; (ii) the inputs and assumptions underlying the use of exit terminal year EBITDA multiples ranging from 8.0x to 10.5x; (iii) the inputs and assumptions underlying the use of the range discount rates of

---

[1] U.S. Securities and Exchange Commission, *Non-GAAP Financial Measures*, last updated Apr. 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

9.5% to 11.5%; (iv) the inputs and assumptions for the perpetuity growth rates ranging from 2.5% to 3.5%; (v) the adjusted net debt and tax-effected underfunded pension liability of the Company as of September 30, 2022; (vi) the number of fully diluted outstanding shares of Altra; and (vii) the expected tax savings from future amortization expenses for the years 2027 through 2045.

31.    With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the basis for applying a range of NTM EV/EBITDA multiples of 8.0x to 11.0x to estimates of the Company's forward adjusted EBITDA; (ii) the Company's adjusted net debt; (iii) the number of projected fully diluted outstanding Company stock as of December 31, 2022; and (v) the basis for applying the illustrative discount rate of 12.6%.

32.    With respect to Goldman Sachs' *Selected Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected for the analysis.

33.    With respect to Goldman Sachs' *Premia Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions reviewed and analyzed by Goldman Sachs; and (ii) the premia paid in those selected transactions.

34.    With respect to Goldman Sachs' role as the Company's financial advisor, the Proxy Statement fails to disclose whether any division or divisions other than Goldman Sachs' Investment Banking Division provided any financial advisory or underwriting services to Altra or Regal Rexnord for which Goldman Sachs has recognized compensation.

35.    In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision

regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.    Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

41.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of Altra within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Altra, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly

12

or indirectly, the decision-making of Altra, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Altra, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these

13

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49.    Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.    Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.    Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.    Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.    Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 29, 2022

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**

*/s/ Benjamin Y. Kaufman*

Benjamin Y. Kaufman
Rourke C. Donahue
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4650
Fax: (212) 686-0114
kaufman@whafh.com
donahue@whafh.com

*Attorneys for Plaintiff*
